United States District Court

For the Northern District of California

1

2

3

4

5              UNITED STATES DISTRICT COURT

6              NORTHERN DISTRICT OF CALIFORNIA

7

8   UNITED STATES OF AMERICA,                    No. CR-13-0566 EMC

9                Plaintiff,

10       v.                                      **ORDER DENYING DEFENDANTS
                                                 CARROLL AND LEE'S MOTIONS TO
11   RYAN CARROLL, *et al*.,                     SEVER**

12                Defendants.                    **(Docket Nos. 59, 77)**
                                   /
13

14

15          On September 10, 2008 Reetpaul Rana was shot to death during a drug transaction in

16   Humboldt County, California. Docket No. 57 p. 1 (Def. Lee's Mot. To Suppress). A five year

17   investigation into the murder of Rana led to the arrest and indictment of codefendants Ryan Carroll

18   and Robert Lee. Docket No. 80, p. 1. Carroll is charged with: (1) robbery affecting interstate

19   commerce; (2) use/possession of a firearm in furtherance of a crime of violence; (3) use of firearm in

20   furtherance of crime of violence causing murder; (4) conspiracy; (5) destruction of evidence; and (6)

21   use of fire in commission of federal felony. Docket No. 1, Indictment, at pp. 3-4. Carroll pled not

22   guilty to all six counts. Docket No. 7, Arraignment.

23          Lee is charged with overlapping counts of: (4) conspiracy; (5) destruction of evidence; and

24   (6) use of fire in commission of federal felony. Indictment at p. 4. Lee is independently charged

25   with counts: (7) accessory after the fact; (8) manufacture and possession with intent to distribute a

26   controlled substance; and (9) use/possession of a firearm in furtherance of a drug trafficking crime.

27   *Id*. Lee pled not guilty to all counts. Docket No. 14, Arraignment.

28

**United States District Court**
For the Northern District of California

1   On February 26, 2015, Carroll filed a motion to sever his trial from Lee's, arguing that a joint

2   trial would be fundamentally unfair.  Docket No. 59.  Lee joined in the request.  Docket No. 77.

3                                    **I.   DISCUSSION**

4   A.     Legal Standard

5          Criminal defendants may be tried together pursuant to Rule 8(b) of the Federal Rules of

6   Criminal Procedure.  That rule provides that "[t]wo or more defendants may be charged in the same

7   indictment or information if they are alleged to have participated in the same act or transaction or in

8   the same series of acts or transactions constituting an offense or offenses."  Fed. R. Crim. P. 8.

9   However, even if criminal defendants are properly joined under Rule 8(b), such joinder may

10  improperly prejudice one or all of the defendants.  *Zafiro v. United States*, 506 U.S. 534 (1993).  In

11  recognition of this potential problem, a remedy lies in Rule 14(a), which provides that:

12               If the joinder of offenses or defendants in an indictment, an
                 information, or a consolidation for trial appears to prejudice a
13               defendant or the government, the court may order separate trials of
                 counts, sever the defendants' trials, or provide any other relief that
14               justice requires.

15  Fed. R. Crim. P. 14.

16         The United States Supreme Court has held that  "a district court should grant severance

17  under Rule 14 only if there is a serious risk that a joint trial would prejudice a specific trial right of

18  one of the defendants, or prevent the jury from making a reliable judgment about guilt or

19  innocence."  *Zafiro,* 506 U.S. at 539.  When bringing a motion to sever, the moving party bears the

20  burden of proving that a joint trial is so manifestly prejudicial that it violates the movant's right to a

21  fair trial.  *United States v. Mitchell*, 502 F.3d 931, 963 (9th Cir. 2007).  In evaluating the prejudicial

22  effect of a joint trial, a court should review the specific and practical factors of each case that create

23  a risk of severe prejudice.  For example, a defendant might suffer prejudice if the prosecution is able

24  to admit evidence in a joint-trial that would be inadmissible against that defendant in a separate trial.

25  *Id.*  "Conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be

26  available to a defendant tried alone were unavailable in a joint trial."  *Id.*  Additionally, courts have

27  widely recognized that severe prejudice may result when joined defendants are asserting "mutually

28  antagonistic" defenses.  *Id.* (collecting cases).

2

**United States District Court**
For the Northern District of California

1    In the end, the degree of prejudice inflicted by joinder is a question that a district court must

2 evaluate holistically. *Zafiro,* 506 U.S. at 539.  That determination, as well as the ultimate question

3 of severance under Rule 14, are within the discretion of the court.  *Id*.

4    Here, Carroll argues that the Court should sever his trial from that of his codefendant Lee

5 because (1) he and Lee will present mutually antagonistic defenses; and (2) a joint trial will deprive

6 him of evidence he could otherwise present to the jury.

7    B.    <u>Mutually Antagonistic Defenses</u>

8    The Ninth Circuit has held that severance of a joint trial may be necessary where the

9 codefendants present mutually antagonistic theories of defense.  *United States v. Tootick*, 952 F.2d

10 1078, 1081 (9th Cir. 1991).  Mutually antagonistic defenses are typically defined as theories of

11 defense that logically require the acquittal of one defendant, if the other defendant is convicted.  *Id*.

12 In *Tootick*, the Ninth Circuit addressed a stabbing that took place in a secluded area.  952 F.2d at

13 1080.  The victim – Aaron Hart – testified that he accompanied two other men – Moses Tootick and

14 Charles Frank – to a secluded area in a pickup truck.  *Id*. at 1081.  Hart further testified that once

15 they reached this area Frank stabbed him.  *Id*.  Frank testified that it was Tootick that stabbed Hart.

16 *Id*.  Tootick did not testify, but presented argument that at the time of the stabbing he was in an

17 alcohol induced stupor in the backseat of the truck.  *Id*.

18    The Ninth Circuit explained that Tootick and Frank's theories of defense were "mutually

19 exclusive" because "there was no suggestion that Hart injured himself" or any evidence of a third-

20 party's involvement.  Therefore "the jury could not acquit Tootick without disbelieving Frank."  *Id*.

21 As a result of these mutually exclusive defenses, the court found that Tootick and Frank had been

22 severely prejudiced by their joint trial, and that the trial court failed to provide sufficient instruction

23 to cure that prejudice.  *Id*. at 1083.  Accordingly, the Ninth Circuit reversed the convictions.  *Id*.

24    The mutually exclusive nature of defenses that warrant severance is illustrated by the

25 contrasting scenario in *United States v. Cheeves,* 2010 WL 1260808.  In *Cheeves*, the codefendants –

26 Deron Cheeves and Reginald Elmore – were alleged to have attended a funeral at a church in San

27 Francisco.  Once at the church, Elmore allegedly fired a gun into a group of mourners, and then fled.

28 During the escape, Elmore allegedly gave his gun to Cheeves, who attempted to dispose of it.  Prior

1  to their join-trial, Elmore and Cheeves moved to sever, arguing that their defenses were mutually

2  antagonistic.  At that time, Cheeves informed the court that his defense theory was "that he did not

3  have a gun on that day, that it was Elmore who discharged the gun, ran with the gun, and then

4  [disposed of it.]"  *Id*.  Elmore, on the other hand, informed the court that his defense theory was:

5  Cheeves did it.  *Id*.

6       Judge Breyer concluded that separate trials were not necessary because, while the defendants

7  "[did] indeed articulate mutually antagonistic defenses . . . they fail[ed] to establish a likelihood that

8  either co-defendant will suffer extreme prejudice because of these antagonistic defenses."  *Id*.  In

9  distinguishing *Tootick*, Judge Breyer noted that in *Tootick* there was no dispute that all three men

10  were present and alone in the secluded area, and there was no evidence "to support a conclusion that

11  neither defendant committed the crime."  *Id*. at *3.  In *Tootick*, acquittal of one necessarily resulted

12  in conviction of the other.  By contrast, Cheeves and Elmore were in a bustling metropolis, and near

13  a crowd of people.  *Id*.  This allowed for a possibility that *neither* defendant committed the crimes.

14  *Id*.  Either defendant could be acquitted without necessarily convicting the other.  Further, the court

15  noted that, unlike *Tootick*, Elmore and Cheeves were not charged with the same crime.  *Id*.  This fact

16  made their defenses less antagonistic, and their joint trial less prejudicial, because "whether or not

17  Cheeves disposed of the gun does not make it more likely that Elmore shot the gun."  *Id*. at *4.  The

18  court thus denied the motion to sever because the defense theories were not as antagonistic as those

19  confronted in *Tootick*, and the jury would have greater "flexibility" in assessing the evidence and

20  rendering a verdict.  *Id*.

21       Here, Carroll's apparent theory of defense is that Lee was the one who shot Rana at the

22  secluded forest area.  Lee denies any involvement.  Docket No., 59 p. 4.  Lee's purported defense is

23  "that he was not even present at the scene of the homicide and that Mr. Carroll must have acted

24  alone in killing the victim."  *Id*.  The government's theory is that Lee did not murder Rana but was

25  involved in helping Carroll set fire to Rana's car after the killing.  *See* Docket No. 97, p. 9; *see also*

26  Docket No. 1, p. 12.  Like *Cheeves*, only one defendant – Carroll – is charged with murdering Rana.

27  Lee is not charged with murder; rather, he allegedly disposed of murder-related evidence after the

28  fact.  A jury could convict both Carroll and Lee; a conviction of Carroll would not require acquittal

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1    of Lee.  Moreover, Carroll's acquittal would not result in a conviction of Lee of the murder.  Hence,

2    the positions of the defendants, while perhaps antagonistic, are not mutually exclusive as in *Tootick*.

3    *See Tootick*, 952 F.2d at 1081.  And, like the independent charges presented in *Cheeves,* whether

4    Carroll shot Rana does not determinatively inform the question of whether Lee disposed of the

5    evidence.  And conversely, whether Lee destroyed evidence does not necessarily show that Carroll

6    (instead of someone else) shot Rana.  In short, like *Cheeves*, this case "is not a zero sum game."

7    *Cheeves*, 2010 WL 1260808, at *3.

8            Additionally, to the extent any prejudice is wrought from the defendant's defense theories,

9    the Court will provide timely and appropriate instructions to limit the effect.  *See Tootick*,  952 F.2d

10   at 1083 (suggesting that the prejudice of mutually exclusive defenses was curable by instruction);

11   *see also Cheeves*, 2010 WL 1260808, at *4 (noting that the "Court is capable of limiting any

12   possible prejudicial effect" of antagonistic defenses "through the use of appropriate and timely jury

13   instructions")

14           Thus, the Court finds that Lee and Carroll's antagonistic defenses are determinately

15   distinguishable from the mutually exclusive defenses in *Tootick.*  Further, the Court finds *Cheeves*

16   persuasive and applicable.  Hence, for the reasons discussed, Lee and Carroll's defense theories will

17   not inflict sufficient prejudice as to require severance under Rule 14.

18   C.      Deprivation of Evidence

19           Carroll further argues that a joint trial will prejudice him because he will be unable to present

20   evidence that would otherwise be available to him in a separate trial.  Specifically, Carroll argues

21   that if Lee does not testify, Carroll's defense will be prejudiced by an inability to comment on Lee's

22   anticipated silence.  Lee's Fifth Amendment right, if exercised, cannot be allowed to be

23   compromised by any such comment.

24           In the Ninth Circuit, "a defendant who [will be] denied the opportunity to comment on his

25   co-defendant's [anticipated] silence must demonstrate probable prejudice in the presentation of his

26   defenses to the trier of fact in order to claim a right to severance."  *United States v. De La Cruz*

27   *Bellinger*, 422 F.2d 723, 727 (9th Cir. 1970).

28

**United States District Court**
For the Northern District of California

1    In *De La Cruz Bellinger*, a defendant challenged his conviction on the grounds that the

2 district court improperly denied his motion to sever.  Citing *De Luna v. United States*, 308 F.2d 140

3 (5th Cir. 1962), the defendant argued that he was denied the benefit of commenting on his co-

4 defendant's silence at trial, and thus a fair trial.  In *De Luna*, the Fifth Circuit held that "[i]f an

5 attorney's duty to his client should require him to draw the jury's attention to the possible inference

6 of guilt from a co-defendant's silence, the trial judge's duty is to order that the defendants be tried

7 separately."  308 F.2d at 141.  In *De La Cruz Bellinger*, the Ninth Circuit responded:

8           Unlike the situation in *De Luna*, where the co-defendants attempted to
           shift the blame to each other, the defenses here were simply unrelated.
9           Bellinger and Holley could not have benefitted by commenting on
           Beavers' failure to testify since, under their own version of the facts,
10          they had no knowledge of his participation in the crime charged.
           Hence, they were not prejudiced by the denial of the pre-trial motion
11          to sever.

12 *De La Cruz Bellinger*, 422 F.2d at 727.  In so affirming, the court expressly rejected a *per se* rule of

13 severance when a defendant is denied the benefit of commenting on his co-defendant's silence.  *Id*.

14 Recognizing that a *per se* rule could potentially "create built-in reversible error, [ ] in the discretion

15 of the defendants" the court made it clear that the party requesting severance must be able to show

16 "probable prejudice" to their defense.  *Id*. at n. 6 (quoting *De Luna*, 308 F.2d at 156 (Bell, J.

17 concurring).

18    Here, Carroll is correct that if Lee chooses not to testify, Carroll cannot comment upon it to

19 the jury. *See Griffin v. California*, 380 U.S. 609, 614 (1965).  However, to obtain severance, Carroll

20 must demonstrate that "probable prejudice" will arise from his inability to comment upon Lee's

21 silence. *Bellinger*, 422 F.2d at 727.  Carroll contends that prejudice is probable because he will be

22 unable to suggest to the jury that Lee is choosing to remain silent because he "does not want to

23 incriminate himself by admitting that he was the one who actually shot and killed Mr. Rana."

24 Docket No. 93, p. 3.  The Court finds this showing of probability of prejudice insufficient because

25 the comment Carroll wants to make at trial would be of little incremental value to Carroll's defense.

26    As noted above, Carroll has indicated an intent to testify that Lee killed Rana.  If Carroll

27 *does* testify to that effect, Lee's silence in the face of that accusation and failure to rebut will be

28 quite apparent to the jury, and thus the added value of commenting on Lee's silence will be slight.  If

United States District Court

For the Northern District of California

1   Carroll chooses not to testify, any suggestion that the jury should infer guilt from Lee's silence could

2   actually hurt Carroll – as it could reflect darkly upon his own silence in the face of the government's

3   accusations; Carroll's position might be seen as hypocritical.  In either scenario, commenting on

4   Lee's silence is of little incremental value to Carroll's defense.  Carroll has failed to demonstrate a

5   sufficient probability of prejudice to warrant severance.

6   D.      Compartmentalization of Evidence

7          In his joinder of Carroll's motion to sever, Lee argues that he will be prejudiced by a joint

8   trial because (1) the evidence related to Carroll's alleged killing of Rana would be inadmissible

9   against him in a separate trial; and (2) Carroll's accusation that Lee murdered Rana will taint the

10  jury's perception of him.  According to Lee, this level of prejudice is severe enough to mandate

11  severance under Rule 14 because the jury will not be able to compartmentalize the evidence against

12  him from the evidence presented by and against Carroll.  The Court finds Lee's showing of prejudice

13  insufficient for two primary reasons.

14         First, as discussed above, when two codefendants accuse one another of a crime that they are

15  both charged with, the prejudice therefrom does not typically require severance unless the acquittal

16  of one defendant logically requires the conviction of the other — *i.e.* the defendants' theories are

17  mutually exclusive, not merely antagonistic.  It follows, *a fortiori*, that where only *one defendant* is

18  charged with the crime at issue, any prejudice from a cross-accusation by that defendant against the

19  uncharged defendant is more attenuated than where both defendants are so charged.  Here, the

20  murder accusation against Lee will be made by the only person charged with the murder – Carroll;

21  unlike the situation where both defendants are charged with the crime, the self-serving nature of

22  Carroll's attempt to blame Lee, the uncharged defendant, will be apparent.  Importantly, the

23  government does *not* join in Carroll's accusation against Lee.  Accordingly, the prejudice attendant

24  to Carroll's accusation will likely be minimal, especially since Lee is charged with crimes other than

25  murder.

26         Second, as to the prejudice to Lee arising from the evidence against Carroll, the Court finds

27  that the prejudice Lee complains of is little more than the prejudice inherent in any joint trial.  *See*

28  *United States v. Decoud*, 456 F.3d 996, 1009 (9th Cir. 2006) ("The inevitable consequence of any

7

United States District Court

For the Northern District of California

1    joint trial is that the jury will become aware of evidence of one crime while considering a

2    defendant's guilt or innocence of another crime."). Furthermore, the Court finds that any such

3    prejudice can be mitigated by limiting instructions. *United States v. Fernandez*, 388 F.3d 1199,

4    1243 (9th Cir. 2004) modified, 425 F.3d 1248 (9th Cir. 2005) ("We have repeatedly held that a

5    district court's careful and frequent limiting instructions to the jury, explaining how and against

6    whom certain evidence may be considered, can reduce or eliminate any possibility of prejudice

7    arising from a joint trial.").[1]

8         For these same reasons, the Court also rejects Lee's argument that the evidence presented by

9    and against Carroll will violate his right to due process because they will "necessarily prevent[] a

10   fair trial." *Kealohapauole v. Shimoda*, 800 F.2d 1463, 1465 (9th Cir. 1986).

11        In sum, the Court finds that the Defendants will not be sufficiently prejudiced as to mandate

12   severance under Rule 14. The motions are thus **DENIED**.

13        This order disposes of Docket Nos. 59 and 77.

14

15        IT IS SO ORDERED.

16

17   Dated: April 30, 2015

18                                                    _____
                                                     EDWARD M. CHEN
19                                                   United States District Judge

20

21

22

23

24

25

26        [1] The Court has dismissed the charge of conspiracy. However, the conspiracy charge could –
     potentially – be brought against both defendants in a superceding indictment. Should that take
27   place, the Court notes that the Ninth Circuit has repeatedly held that a joint trial is "particularly
     appropriate" where codefendants are charged with conspiracy, even if some of evidence would not
28   be admissible against each of them in a separate trial.

8