UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR-13-0566 EMC |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT** |
| RYAN CARROLL, *et al*., | **(Docket No. 97)** |
| Defendants. | |

For the reasons stated on the record on May 1, 2015, and as supplemented for the reasons stated herein, Defendant's motion to dismiss the indictment is denied.

## I. BACKGROUND

In January of 2010, Ryan Carroll was arrested in connection with the killing of Reetpaul Rana. Subsequently, Carroll attempted to retain attorneys Russell Clanton and Benjamin Okin for his defense. *See* Exhibit C at p. 8. Okin was an associate in Clanton's firm but Clanton and Okin generally maintained their own clients. *See* Docket No. 140, *First Evidentiary Hearing* (FEH). Ben Okin reviewed and discussed Carroll's case with Carroll. *Id*; *see also* Exhibit D at p. 7-8. Carroll did not retain Okin and/or Clanton to represent him, but did indicate an intent to pay Okin to review his case and to continue providing advice on the side. *See id.* (Carroll states, "I'm basically going to pay. I'm going to start with paying [Okin] just like for like a couple hours of work or whatever because he's like scanned my case or whatever, right. And like he's telling me all these things about it or whatever that I had never heard from in my public defender.").

In April of 2012 Robert Lee was charged as a codefendant in Carroll's case. The Humboldt Superior Court attempted to appoint Ben Okin to represent Lee. Exhibit E at p. 2. Mr. Okin declined the appointment stating:

> "As much as I would like to accept the appointment on this particular matter, judge, I have had extensive conversation[sic] with [Carroll]. They were attempting to retain us. He was unable to; but given the information I have from him, I am unable to accept the appointment."

Exhibit F at p. 2. Two days after Okin declined the court's appointment as counsel to Lee, Mr. Manny Daskal was appointed instead. Exhibit G at p. 2.

In September of 2012, Okin (after leaving Clanton's office) and Daskal formed a law firm. *See* Exhibit H; *see also* Exhibit I. In December of 2012, Okin made an appearance on behalf of Daskal for Lee – to set dates in his case. *See* Exhibit J (Humboldt County Superior Court transcript). Okin's appearance on Daskal's behalf was made spontaneously; he happened to be in the courtroom in Daskal's absence. *See* FEH.

In that same month, a man who later became a government informant in this case (Informant) was arrested. Exhibit L at p. 2. On October 29, 2012, the charges against Informant were dismissed by motion of the prosecution. *Id.* Carroll contends that this dismissal was a result of Informant's willingness to cooperate with the government's prosecution of Carroll. The government does not dispute this claim.

At some point after Informant's arrest, but before the government conducted his formal interview, Informant hired Clanton to represent him. *See* Exhibit M (email correspondence between FBI and Clanton, regarding Clanton's representation of Informant). Clanton served as Informant's counsel and intermediary for his communications with the government during this time. *Id.*

Based on these events, Carroll now moves to dismiss the indictment, or alternatively suppress evidence, based on a violation of his Sixth Amendment and Fifth Amendment rights.

## II. DISCUSSION

A. <u>Sixth Amendment Violation</u>

The Sixth Amendment right to counsel attaches when the government initiates adversarial proceedings against a defendant. *See Maine v. Moulton*, 474 U.S. 159, 170 (1985). At that point, a

defendant has the right to "rely on his counsel as a 'medium' between himself and the government." *United States v. Danielson*, 325 F.3d 1054, 1066 (9th Cir. 2003), as amended (May 19, 2003). The Supreme Court has stated that this right prohibits the government from eliciting incriminating information from an indicted defendant, outside the presence of counsel. *See Massiah v. United States*, 377 U.S. 201, 206 (1964) (holding that eliciting a defendant's incriminating statements through a government informant, in post-indictment proceedings, intruded upon the right to counsel and violated the Sixth Amendment). As such, any prejudicial information obtained under such circumstances must be suppressed. *Id*. at 207.

In general, a defendant bears the complete burden of showing that the information obtained by the government would be prejudicial if introduced. *United States v. Bagley*, 641 F.2d 1235, 1238 (9th Cir. 1981) ("to establish a violation of *Massiah* defendant must show that he suffered prejudice at trial as a result of evidence obtained from interrogation outside the presence of counsel."). However, when the information obtained is not incriminating evidence (not already disclosed), but is information regarding the defendant's trial strategy, showing prejudice can become more difficult. *See Danielson*, 325 F.3d at 1071-72. Addressing this difficulty, the Ninth Circuit has adopted a two-step burden shifting framework. *Id*.

First, a defendant bears the burden of establishing a *prima facie* case that the government affirmatively acted "to intrude into the attorney-client relationship and thereby obtain the privileged information." *Id*. at 1071. Second, once that *prima facie* case is established, the burden shifts to the government to "show by a preponderance of that evidence, that all of the evidence it proposes to use, and all of its trial strategy, were derived from legitimate independent sources." *Id*. at 1072 (quoting *Kastigar v. United States*, 406 U.S. 441 (1972)) (quotation marks omitted). If the government is unable to meet this burden, then "the defendant has suffered prejudice" and the Sixth Amendment rights of the defendant have been violated. *Id*.

Here, Carroll alleges that Okin's representation of Lee and Clanton's representation of Informant prejudiced his Sixth Amendment rights by effecting a prejudicial governmental intrusion upon his attorney-client relationship.

1. Okin's Representation of Lee

According to Carroll, Okin initially met with Carroll and discussed his side of the story before going on to (1) form a law firm with Lee's defense attorney Manny Daskal; and (2) represent Lee himself at a brief hearing in state court addressing an administrative matter. The thrust of Carroll's claim is that Okin passed prejudicial information, obtained in his representation of Carroll, to Lee and Daskal.

On April 24, 2015, the Court held an evidentiary hearing to determine the accuracy of Carroll's allegations, and what prejudice resulted therefrom. At the hearing, Mr. Okin testified that he met briefly with Carroll and reviewed the prosecution's file on Carroll's case, for the purposes of determining the potential cost of his defense. Okin testified that he did not acquire any substantive or strategic information about Carroll's case during those interactions. Okin also testified that the firm he and Daskal formed – while marketed as a joint practice – was internally distinct; maintaining separate clients, staff, and financials. In this regard, Okin stated that he never exchanged any information with Mr. Daskal regarding Carroll's case. In a brief court hearing in which he appeared for Mr. Daskal on behalf of Lee, Okin stated he did so as a spontaneous substitute for Mr. Daskal, and only to handle a scheduling issue. Okin's account of the hearing is confirmed by the state court record. Overall, Okin testified credibly, and his testimony is uncontradicted by any evidence before the Court.

In light of Okin's testimony, the Court finds neither Okin nor Daskal's representation of Lee supply a basis for Carroll's Sixth Amendment claim. As an initial matter, there is no evidence that the government was involved. To show a Sixth Amendment violation Carroll bears the burden to show that the *government acted* to intrude upon his attorney client relationship. *See Danielson*, 325 F.3d at 1071-72. Carroll's vague and unsupported assertions that the government was negligent in allowing an ethical conflict to arise between defense attorneys falls well-short of this burden. Such an alleged deficiency is not the kind of affirmative intrusive governmental conduct necessary to give rise to a Sixth Amendment violation. *Id.*

Second, the Court finds that Okin neither acquired nor shared any substantive information regarding Carroll's case with Mr. Daskal. It is clear from the record that Okin's momentary

4

representation of Lee, to handle a purely administrative matter, did not prejudice Carroll, or indicate an inappropriate transfer of information. Further, the Court credits Okin's testimony that he and Daskal did not share any substantial information which Okin may have obtained from Carroll. Thus, while Okin and Daskal's representation of Lee may have amounted to a momentary ethical conflict, there is no evidence of any prejudicial transfer of information to Lee.

In sum, Carroll's claim that Okin and Daskal's representation of Lee prejudiced his Sixth Amendment rights fails for two independently sufficient reasons (1) there was no affirmative governmental action; and (2) there was no prejudicial intrusion.

2. <u>Clanton's Representation of the Government Informant</u>

Carroll contends that Clanton reviewed his case for a period of months, and during that time acquired substantive and strategic information regarding his defense. According to Carroll, Clanton then went on to represent a government witness, who agreed to testify against Carroll in exchange for a plea deal. Carroll claims that the government knew that Clanton gained this strategically important information, and that Clanton transferred it to the informant, who then transferred it to the government.

On May 1, 2015, the Court held an evidentiary hearing to determine the accuracy of Carroll's allegations. At the hearing, Clanton testified that he had never spoken with Carroll about his case, reviewed Carroll's case file, or acquired any substantive information regarding Carroll's trial strategy. Clanton further testified that he did not know of the alleged conflict arising from his representation of the government's informant until they were brought to his attention by the Court. According to Clanton, he did not share clients with Okin, and did not know that Okin had engaged with Carroll while working at Clanton's firm.

At that same hearing, Kevin Carroll – Carroll's brother – testified that he had spoken with Clanton on the phone many times regarding Carroll's case. Kevin testified that Clanton thought Carroll could avoid trial on procedural grounds, and that Clanton was consistently checking in on how Carroll's case was progressing. Kevin admitted that he never discussed any substantive issues with Clanton, but mainly discussed his ability to pay for Clanton's services or relayed questions to Carroll's public defender. Furthermore, on the transcribed jailhouse calls, Ryan Carroll refers

primarily to "Clanton's office" which would not have been inconsistent with his having spoken primarily to Okin.

In view of the evidence at the hearing and supplied in the record, the Court finds that Clanton's representation of the government's informant fail to establish a Sixth Amendment claim. First, there is no showing that the government affirmatively intruded into Carroll's attorney-client relationship. Carroll asserts that Detective Franco and Agent Collar reviewed a series of jail calls that indicated that Carroll was in communication with Clanton's firm. Carroll then argues that this knowledge is imputable to the prosecution in this case and the government. Even if such knowledge could be so imputed, at most it shows negligence and oversight by the government and not any affirmative interference with Carroll's constitutional rights. Even if the government had imputed knowledge that Carroll had consulted with Clanton early on, there is no evidence the government was familiar with the substance of those discussions and whether significant confidential information (known only to Ryan Carroll) was conveyed based on jailhouse call records in its possession. In fact, the court record shows Clanton never appeared for Carroll. Once again, this failure to show active government intrusion is fatal to Carroll's constitutional claim.

Second, the Court finds Clanton's testimony regarding his involvement in Carroll's case credible. While contradicted by Kevin Carroll's testimony and Ryan Carroll's declaration, Clanton's version of events is consistent with the testimony of Okin – that Okin, not Carroll, actually engaged with Carroll, and that Clanton and Okin generally did not share clients. Furthermore, by his own admission Carroll signed a waiver for Okin – not Clanton – to review his case file. The only evidence that conflicts with Clanton's version of events is the interested testimony of Ryan and Kevin Carroll. However, even Kevin Carroll testified that Clanton's involvement in Ryan's case was from his knowledge non-substantive. Thus, the only direct evidence that Clanton acquired any prejudicial information is Ryan's vague declaration that he discussed details of his case with Clanton. There is no objective specific evidence to establish a transfer of prejudicial and otherwise undisclosed information to Clanton.

Further, the Court finds no evidence supporting the alleged transfer of putatively prejudicial information – from Clanton to the Informant. Having reviewed the Informant's proffer, the

Informant does not disclose information that would seem to have come from Carroll.  The proffer provides a first-hand narrative of events in which Carroll has little role.  Moreover, the proffer does not betray any information that might be unique to Ryan Carroll.  Hence, the Court finds little evidence to support Carroll's alleged transfers of information from Carroll to the Informant, and thus there is no persuasive evidence to support Carroll's claim of prejudice.

For these reasons, the Court finds that Clanton's acquired little, if any, information about Carroll's case, and that none of this information was transferred to Informant or the government.  Thus, Carroll's claim must fail.  Further, the Court finds that Carroll has failed to show that the government affirmatively acted "to intrude into the attorney-client relationship and thereby obtain the privileged information."  *Danielson*, 325 F.3d at 1071.  For these reasons, the Court rejects Carroll's claim that his Sixth Amendment rights were prejudiced.

B.  Fifth Amendment Violation

In the Ninth Circuit, a claim for a Fifth Amendment violation that is premised on an intrusion into the attorney-client relationship has three elements: "(1) the government was objectively aware of an ongoing, personal attorney-client relationship; (2) the government deliberately intruded into that relationship; and (3), as a result, the defendant suffered actual and substantial prejudice."  *United States v. Stringer*, 535 F.3d 929, 941 (9th Cir. 2008) (citing *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996)).

Carroll argues that Okin and Clanton's subsequent respective representation of Lee and the government's informant violated his Fifth Amendment rights.  For the reasons discussed above, Carroll has failed to provide any relevant evidence to show that the government "deliberately intruded" into this attorney client relationship with either Okin or Clanton or that Carroll suffered actual and substantial prejudice.  *Stringer*, 535 F.3d at 941.  Accordingly, Carroll's Fifth Amendment claim fails as well.  *Id*.

///
///
///
///

### III. CONCLUSION

For the reasons stated above, the Court hereby **DENIES** Carroll's motion to dismiss. This order disposes of Docket No. 97.

IT IS SO ORDERED.

Dated: June 1, 2015

EDWARD M. CHEN
United States District Judge